UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WFG NATIONAL TITLE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:16-CV-2366-G |
| PENIEL HOLDINGS, LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion to dismiss under Rule 12(b)(1) and, alternatively, the defendant's request for the court to abstain (docket entry 8). For the reasons stated below, the defendant's motion is denied.

### I. BACKGROUND

On September 25, 2015, the defendant, Peniel Holdings, LLC ("Peniel") contracted to acquire real property located in Cooke County, Texas, from the property's owner, John Herlihy ("Herlihy"). Original Complaint For Declaratory Relief ("Complaint") ¶ 6 (docket entry 1). The title company, the plaintiff WFG National Title Insurance Company ("WFG"), contracted with Millennium Closing

Services, LLC ("Millennium") to act as the escrow agent and to close the transaction. *Id.* On October 29, 2015, Peniel deposited $1,460,970.00 into Millennium's account as payment for the property. *Id.* ¶ 7. However, Millennium failed to deliver both Peniel's payment to Herlihy and Herlihy's deed to Peniel. *Id.* ¶¶ 7-8. On January 25, 2016, the 53rd Judicial District Court of Travis County, Texas placed Millennium into liquidation. *Id.* ¶ 9. The state court also permanently enjoined Millennium from engaging in any further business and imposed an automatic stay prohibiting actions against Millennium. *Id.*

On February 5, 2016, Peniel wrote to WFG demanding that WFG issue an owner's policy of title insurance. *Id.* ¶ 10. On May 16, 2016, Peniel filed a complaint with the Texas Department of Insurance ("TDI") reiterating the assertions in its demand letter. *Id.* ¶¶ 10-11. On June 13, 2016, Peniel successfully petitioned to set aside the January 25, 2016 automatic stay, thereby allowing Peniel to assert claims against WFG. *Id.* ¶ 12. On July 13, 2016, WFG formally responded to Peniel's complaint with the TDI. *Id.* ¶ 11.

On August 15, 2016, WFG commenced this declaratory judgment action against Peniel. See *id.* WFG seeks to have the court declare whether it is required to: (1) indemnify Peniel under an owner's policy of title insurance; (2) deliver a fee simple deed to Peniel; and (3) reimburse Peniel for any losses attributable to Millennium. *Id.* ¶ 5.

## II.  ANALYSIS

### A.  Standing

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies."  U.S. Const. Art. III, § 2.  Standing -- *i.e.,* the need to demonstrate that the plaintiff has a direct, personal stake in the outcome of the suit -- is an "essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  "Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace [able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction.  See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)); see also *Sommers Drug Stores Company Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("standing is essential to

the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which are decisive of subject matter jurisdiction. See *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)), *cert. denied*, 454 U.S. 897 (1981). The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision).

Moreover, while the burden is on the party seeking to invoke the federal court's subject matter jurisdiction to establish the requisite standing requirements, that burden need be met only by a preponderance of the evidence. See *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

Peniel contends that WFG lacks standing because WFG failed to plead that it has refused to issue the title insurance policy nor that it is entitled to do so. Defendant's Motion to Dismiss for Lack of Jurisdiction ("Peniel's Motion") at 7 (docket entry 8). Moreover, Peniel contends that it has not explicitly threatened to sue WFG for failing to issue the policy. *Id.* Thus, Peniel concludes, because there is no case or controversy, WFG is merely seeking an advisory opinion. *Id.* at 7-8.

In order to establish a case or controversy, WFG must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Vantage Trailers, Inc. v. Beall Corporation*, 567 F.3d 745, 748 (5th Cir. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Courts determine whether there is a specific and concrete threat of litigation and a practical likelihood that the controversy will become real. See *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000) ("The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based."); *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir.) ("We look to the practical likelihood that a controversy will become real."), *cert. denied*, 537 U.S. 1071 (2002). Specifically, courts look to the conduct and communications of the parties. See, *e.g.*, *Orix Credit Alliance, Inc.*, 212 F.3d at 897; *State of Texas v. West Publishing Company*, 882 F.2d 171, 176 (5th Cir. 1989) (looking to the defendant's conduct to determine

whether litigation is sufficiently imminent), *cert. denied*, 493 U.S. 1058 (1990); *Steelplan, Ltd. v. Steel Plan Australia Pty. Ltd.*, No. 3:02-CV-0470-P, 2003 WL 21499303, at *5 (N.D. Tex. June 25, 2003) (Solis, J.) (looking to previous demand letters sent by the defendants); *Hillwood Development Company v. Related Companies, Inc.*, No. 3:04-CV-1100-L, 2006 WL 1140472, at *5-6 (N.D. Tex. Apr. 28, 2006) (Lindsay, J.) (same).  The purpose of the court's inquiry is to ensure that the threatened suit has "taken on final shape so that the court can see what legal issues it is deciding." *Hillwood Development Company*, 2006 WL 1140472, at *5 (quoting *Orix Credit Alliance, Inc.*, 212 F.3d at 898).

Here, Peniel's demand letter -- in conjunction with its conduct -- demonstrates that there is a concrete case or controversy.  Peniel's letter specifically demands that WFG:  (1) issue the title policy; (2) indemnify Peniel; and (3) issue certificates of coverage.  Complaint, Exh. B.  Peniel further filed a complaint with the TDI reiterating its demands set forth in the February 5, 2016 letter.  *See* Complaint ¶ 11.  Moreover, WFG's complaint for declaratory relief in the instant action directly mirrors both Peniel's demand letter and its complaint with the TDI.  See *id.* ¶ 5.  The parties' actions here clearly allow the court to "see what legal issues it is deciding."  See *Hillwood Development Company*, 2006 WL 1140472, at *5 (quoting *Orix Credit Alliance, Inc.*, 212 F.3d at 898).  Furthermore, Peniel's contention that there is no case or controversy because WFG has not refused to issue the policy is unfounded.

Peniel's Motion at 7. It is clear that Peniel does not yet possess the policy despite its demands. *See* Complaint ¶¶ 13-15. Thus, there is a concrete dispute between the parties.

It is true, however, that Peniel's demand letter lacks any specific threats showing that litigation is imminent. *See* Complaint, Exh. B; see also *Steelplan, Ltd.*, 2003 WL 21499303, at *5; *Hillwood Development Company*, 2006 WL 1140472, at *6. However, the court must also look to Peniel's conduct. Peniel laid the foundation for litigation when it sought to set aside the automatic stay in the state court . *See* Complaint ¶ 12. Given such efforts, Peniel's next practical step is to sue WFG. See *Orix Credit Alliance, Inc.*, 212 F.3d at 897. Thus, because there is a concrete dispute with an imminent threat of litigation, WFG has standing to assert its claim against Peniel. The motion to dismiss for lack of jurisdiction is denied.

B. Abstention

1. *Thibodaux Abstention*

In its alternative motion for abstention, Peniel first contends that the court should abstain from exercising jurisdiction based on the doctrine announced in *Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25 (1959). Peniel's Motion at 9. Specifically, Peniel contends that this case involves state law, "the resolution of which is particularly close to the declared sovereign prerogatives and

intentions of the State of Texas to exclusively regulate the business of title insurance whose significance extends beyond the case in question." Peniel's Motion at 9.

*Thibodaux* permits abstention when there is an unsettled area of state law. *Hensel Phelps Construction Company v. Dallas/Fort Worth International Airport Board*, No. 3:03-CV-3043-D, 2005 WL 1489932, at *5 (N.D. Tex. June 22, 2005) (Fitzwater, J.). Specifically, "when a case involves the relationship between city and state or the reach of an uninterpreted state statute that is 'of questionable constitutionality,' federal district courts have been required to stay the proceedings pending a state court determination of the state law issues." *Aburto v. Midland Credit Management, Inc.*, No. 3:08-CV-1473-K, 2009 WL 2252518, at *10 (N.D. Tex. July 27, 2009) (Kinkeade, J.); *Verona Entergy Inc. v. J. K. Petroleum Inc.*, No. CV 15-2893, 2016 WL 1436690, at *2 (W.D. La. Apr. 11, 2016). However, an uninterpreted state statute, alone, does not require abstention. *Verona Entergy Inc.*, 2016 WL 1436690, at *2 (noting that the state statute in question must also be of questionable constitutionality). Here, neither party contends that the Texas Insurance Code is of "questionable constitutionality." Moreover, there is no state court proceeding to first make a determination of state law. Accordingly, the court denies Peniel's request for *Thibodaux* abstention.

2. *Burford Abstention*

Under *Burford v. Sun Oil Company*, courts may abstain when exercising jurisdiction would unduly interfere with complex state administrative processes. 319 U.S. 315 (1943); *Carico Investments, Inc. v. Texas Alcoholic Beverage Commission*, 439 F. Supp. 2d 733, 740 (S.D. Tex. 2006). *Burford* abstention is appropriate:

> (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814 (1976)); see also *Klein v. Federal Insurance Co.*, No. 7:03-CV-0102-D, 2012 WL 2886679, at *3 (N.D. Tex. July 16, 2012) (Fitzwater, Chief J.).

"Essentially, *Burford* instructs a district court to weigh the federal interests in retaining jurisdiction over the dispute against the state's interests in independent action to uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter." *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 700 (5th Cir.), *cert. denied*, 528 U.S. 964 (1999). The Fifth Circuit applies five factors to determine whether *Burford* abstention is appropriate:

> (1) whether the claim arises under federal or state law;
> (2) whether the case requires inquiry into unsettled issues

> of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.

*Moore v. State Farm Fire and Casualty Company*, 556 F.3d 264, 272 (5th Cir. 2009) (quoting *Wilson v. Valley Electric Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (internal citations omitted)).  However, because federal courts have an "unflagging obligation" to exercise jurisdiction given to them, *Burford* abstention is rarely exercised.  *Webb*, 174 F.3d at 700-01 (quoting *Colorado River Water Conservation District*, 424 U.S. at 821).

Here, application of the Fifth Circuit's criteria does not require abstention. WFG's claim arises under state law -- weighing in favor of abstention. *See generally* Complaint.  However, the record is devoid of facts pointing to any sort of complexity. See *Moore*, 556 F.3d at 272-73 (denying that *Burford* abstention was proper because the defendant failed to demonstrate that the action involved complex issues of state law).  Moreover, Peniel even states that WFG failed to "articulate[] any basis" for relief -- implying that the court's decision should be relatively straightforward.  *See* Peniel's Reply to WFG's Response to Its Motion to Dismiss ("Peniel's Reply") at 2-3 (docket entry 12).

Peniel contends that because the TDI exclusively regulates insurance disputes, Texas has a comprehensive regulatory scheme that requires the court to abstain under *Burford*. *See* Peniel's Motion at 9.  First, the TDI does not have exclusive jurisdiction

over state law insurance claims.  See *Chapman v. Commonwealth Land Title Insurance Company*, 814 F. Supp. 2d 716, 723-24 (N.D. Tex. 2011) (Lindsay, J.) (holding that the Texas state legislature did not confer exclusive jurisdiction on the TDI over insurance disputes).  Moreover, "exclusivity" is not the focus of the *Burford* analysis; rather, courts abstain under *Burford* when there is an unsettled and complex issue of state law.  Second, the mere existence of an administrative process does not require that the court abstain.  See *New Orleans Public Service, Inc.*, 491 U.S. at 362; *Williamson v. Guadalupe County Groundwater Conservation District*, 343 F. Supp. 2d 580, 595 (W.D. Tex. 2004).  Thus, Peniel's contention fails.

In deciding whether to abstain under *Burford*, courts also look to whether there is a pending state administrative proceeding.  See, *e.g.*, *St. Paul Insurance Company v. Trejo*, 39 F.3d 585, 589 (5th Cir. 1994) ("St. Paul's lawsuit does not involve a state administrative proceeding.").  Peniel contends that it has a pending administrative proceeding with the TDI.  *See* Peniel's Motion at 9.  However, the record is bereft of information showing that Peniel's "complaint" with the TDI has evolved into an administrative proceeding.  As evidenced by the September 6, 2016 letter from the TDI, Peniel's complaint *may* be used by the TDI's enforcement division as part of an enforcement action.  *See* Peniel's Reply, Exh. 1.  At most, this shows that WFG's suit may be subject to *future* administrative proceedings.  Thus, it would be improper for

- 11 -

the court to invoke the narrow doctrine of *Burford* abstention in this case. See *Webb*, 174 F.3d at 700-01.

### III. CONCLUSION

For the reasons stated above, Peniel's motion is **DENIED**.

**SO ORDERED**.

December 6, 2016.

_____
**A. JOE FISH**
**Senior United States District Judge**

- 12 -